IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAMELA GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:20-cv-801-RAH-SMD |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

## I.     Introduction

Sometime prior to March 2020, Plaintiff Pamela Griffin (Griffin) submitted disputes concerning the tradeline reporting by four different creditors (furnishers). Griffin does not set forth in her First Amended Complaint (Complaint) when or to whom she directed the disputes, whether those were directly to the furnishers or to the credit reporting agencies (CRAs), such as Equifax, Experian or TransUnion. Nevertheless, in response to Griffin's disputes, each furnisher noted its account with Griffin as "in dispute."

Then, for reasons unexplained in the Complaint, Griffin later decided to dispute the "account in dispute" notation of each furnisher, not by directly contacting the furnishers on each account but instead by submitting disputes directly to the CRAs.[1] Griffin does not set

---

[1] This is not the first rodeo for Plaintiff's counsel in this type of case. Nearly identical lawsuits have been filed by counsel in other jurisdictions. At least one federal court has voiced its concern that a plaintiff represented by counsel appears to be creating a cause of action by self-manufacturing inaccuracies in her credit report by disputing and then un-disputing certain tradelines. *See Briscoe v. Equifax Info. Servs., LLC*, Case No. 1-20-cv-02239-WMR-CMS, 2020 WL 10046994, at *4 (N.D. Ga. Oct. 27, 2020), *report and recommendation adopted*, Case No. 1:20-CV-02239-WMR, 2021 WL 2376663 (N.D. Ga. Jan. 12, 2021) (collecting cases). A review of the Complaint in this case against those filed by counsel in others, with a

1

forth in her Complaint why she decided to no longer dispute the original reporting by the furnishers.

Apparently, the furnishers refused to retract or remove the "account in dispute" notations. Griffin then filed suit, claiming the furnishers violated the Fair Credit Reporting Act (FCRA) by refusing to remove the "account in dispute" notations associated with each of the furnisher's accounts.

Presently before the court is the Rule 12(b)(6) Motion to Dismiss (Doc. 31) filed by one of the furnishers, Defendant Pennsylvania Higher Education Assistance Agency (PHEAA), which seeks dismissal of the two FCRA claims asserted against it: that PHEAA *negligently* and *willfully* failed to conduct a proper reinvestigation of Griffin's account when PHEAA failed to direct the CRAs to remove, or clear, the "account in dispute" notation.

In particular, PHEAA argues that it has "complied with the FCRA at all relevant times with regard to Griffin's loan," (Doc. 31 at 3), because "[w]hen a consumer, like Griffin, notifies a furnisher, like PHEAA, that he or she disputes its reporting, Section 1681s-2(a)(3) of the FCRA requires data furnishers to report that its reporting of the account is in dispute" and therefore "[c]onsumers must then contact the furnisher directly to have such notations removed." (Doc. 31 at 3.) Therefore, pertinent to Griffin and PHEAA, since "Griffin has still never contacted PHEAA to have the disputed notation

---

few select tweaks, suggests that Griffin may be trying to do the same here.

removed, . . . PHEAA continues to report that Griffin's account remains in dispute based on the notification PHEAA received from Griffin." (*Id.*)

## II.     Jurisdiction and Venue

The court exercises subject matter jurisdiction over Griffin's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

## III.    Legal Standard

Dismissal is permitted by Federal Rule of Civil Procedure 12(b)(6) when a complaint fails to state a claim upon which relief can be granted. To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Critically, the court's role when making an evaluation under Rule 12(b)(6) is to test the sufficiency of a claim for relief, not to reach a determination on the merits. The court must therefore limit its inquiry primarily to the face of the complaint, take the facts alleged in the complaint as true, and construe them in the light most favorable to the plaintiff. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).

## IV.     Discussion

The FCRA imposes two separate duties on "furnishers of information" like PHEAA. *See Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). "[F]irst, § 1681s-2(a) requires furnishers to submit accurate information to credit reporting agencies; and second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of customer disputes." *Smith v. Wells Fargo Bank, N.A.*, Case No. 2:15–cv–54–MHT–WC, 2016 WL 937949, at *2 (M.D. Ala. Jan. 22, 2016) (quoting *Green*, 288 F. App'x at 642). After a CRA notifies a furnisher of a dispute, "[t]he furnisher must then, within 30 days, conduct a reasonable investigation, review information provided by the CRA, report back to the CRA regarding the investigation, and take other action if information is found to be inaccurate, incomplete, or cannot be verified." *Abbett v. Bank of Am.*, Case No. 3:04-cv-01102 WKW-VPM, 2006 WL 581193, at *3 (M.D. Ala. Mar. 8, 2006).

When a consumer, like Griffin, disputes credit reporting directly to the furnisher, the FCRA requires that a furnisher report the account as *disputed*:

> If the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer.

*See* 15 U.S.C. § 1681s-2(a)(3).

The FCRA provides consumers with a private right of action against a "furnisher of information," like PHEAA, only for violations of Section 1681s–2(b). *See* 15 U.S.C. § 1681s-2(c)(1). To state a Section 1681s-2(b) claim, a plaintiff must allege "that a CRA notified the furnisher of information about the consumer's dispute," *Abbett v. Bank of Am.*, Case No. 3:04-cv-01102 WKW-VPM, 2006 WL 581193, at *3 (M.D. Ala. Mar. 8, 2006),

4

and that the furnisher failed to uphold its duties pursuant to 15 U.S.C. § 1681s-2(b). *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018).

The parties' arguments in this case concern the requirements imposed upon furnishers of information when a consumer, like Griffin, disputes information in a tradeline that already has been notated by the furnisher as an "account in dispute." Applying Section 1681s–2(b), PHEAA argues that it has no duty to change an account already noted as disputed when a customer disputes the "in dispute" notation. This duty arises, so argues PHEAA, only when the consumer directly contacts the furnisher and provides additional information about the dispute. In support of this proposition, PHEAA cites a host of decisions from other federal district courts (primarily the Northern District of Georgia) that have considered the exact same issue. (*See* Doc. 31 at 14–15.)

Those cases, as does this one, traffic in five central facts: (1) consumers previously disputed their accounts, (2) furnishers reported the consumers' accounts as "in dispute" to the CRAs; (3) the consumers later decided to no longer dispute the accounts; (4) the consumers submitted letters to the CRAs requesting that the CRAs remove the "in dispute" notations; and (5) the consumers did not dispute the notations directly with the furnishers.

Given these allegations, as vague as they may be in this case, at a minimum, a furnisher is obligated to undertake an investigation under section 1681s-2(b)(1). The critical question, then, is whether the Complaint sufficiently alleges that the investigation undertaken by PHEAA was unreasonable. *See Felts,* 893 F.3d at 1312. And this question, in turn, depends on what the furnishers' investigation could have uncovered. As the Eleventh Circuit explained in *Felts*, a plaintiff cannot prevail on an investigation claim

5

without demonstrating that, had the furnisher conducted a reasonable investigation, the furnisher would have discovered that the information it reported was inaccurate or incomplete:

> Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation. And, in turn, a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

*Felts*, 893 at 1313 (emphasis in original).

So, according to the Complaint, what could an investigation by PHEAA have uncovered of an account that Griffin previously disputed and was noted as such? As to that, we do not know. Perhaps this is because Griffin, through counsel, is attempting to play a game of bob and weave through crafty pleadings to avoid the outcomes from similar litigation in other jurisdictions. Nevertheless, motives aside, the Complaint provides no information about key facts, such as when did Griffin first dispute the PHEAA account, how did she dispute it, why did she dispute it, and why she decided to no longer dispute it. And more importantly, the Complaint is generally silent and void of details as to exactly what kind of investigation PHEAA should have performed, what it should have reviewed, who should it have consulted, and what exactly it would have discovered and why.

Griffin argues in her response brief that PHEAA could have relied solely on Griffin's request to the CRAs to remove the disputed notation as evidence that Griffin does, in fact, no longer dispute the PHEAA account. PHEAA, for its part, argues that Griffin must provide more because, under its interpretation of the FCRA's statutory language, a furnisher's knowledge of errors turns on specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information. *See, e.g., Briscoe v. Equifax Info. Servs., LLC*, Case No. 1-20-cv-02239-WMR-CMS, 2020 WL 10046994, at *8 (N.D. Ga. Oct. 27, 2020), *report and recommendation adopted*, Case No. 1:20-CV-02239-WMR, 2021 WL 2376663 (N.D. Ga. Jan. 12, 2021). That interpretive battle, however, is premature at this point because Griffin's Complaint is woefully deficient in alleging facts showing that the results of PHEAA's investigation would have been different. *Felts*, 893 F.3d at 1313. As such, the Court concludes that the Complaint against PHEAA fails to state a claim and is due to be dismissed.[2]

## V. Conclusion

Accordingly, it is ORDERED as follows:

(1) Defendant Pennsylvania Higher Education Assistance Agency's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 31) is GRANTED;

(2) The claims against PHEAA are hereby dismissed without prejudice;

---

[2] In its motion, PHEAA argues that Griffin's initial dispute of the PHEAA account was made directly to PHEAA, and because of that initial contact, PHEAA could not reverse the "account in dispute" notation until Griffin contacted PHEAA directly. However, the source of Griffin's initial dispute is not set out in the Complaint and therefore the court cannot consider it.

(3) Plaintiff may file an amended complaint to correct the noted deficiencies within fourteen (14) days of this Order.

DONE, on this the 26th day of August, 2021.

                                                    /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE